UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------X
BELLRIDGE CAPITAL L.P., a Florida Limited Partnership,

          Plaintiff,

  - against -

12 RETECH CORPORATION, a Nevada Corporation

          Defendant.
------------------------------------X

Case No.: 20-cv-567

**COMPLAINT**

Plaintiff, Bellridge Capital L.P., by its undersigned attorneys, for their complaint, respectfully alleges as follows:

**PRELIMINARY STATEMENT**

1.    This is an action for specific performance, a permanent injunction, breach of contract, and related relief arising as the result of defendants' conduct in connection with certain agreements to purchase securities and related convertible note agreements. After entering into negotiated, arms-length agreements, for which defendant 12 ReTech Corporation ("ReTech") received valuable consideration, ReTech breached the agreements in numerous ways, including by failing to honor certain notices of conversion to convert the note into shares of stock and by failing to maintain a reserve of shares as required by the agreements. Because of defendant's failure to honor the agreements, plaintiff is currently unable to convert the notes into the bargained for shares of stock. Accordingly, plaintiff seeks the relief set forth herein.

## PARTIES

2. Plaintiff Bellridge Capital L.P. ("Bellridge" or "plaintiff") is a limited partnership duly organized under the laws of the State of Florida and having its principal place of business located at 515 E. Las Olas Boulevard, Suite 120A Fort Lauderdale, Florida 3330.

3. The partners/limited partners of Bellridge reside in Florida and Canada.

4. For purposes of diversity, Bellridge is a citizen of Florida and Canada.

5. Upon information and belief, defendant 12 ReTech Corporation ("ReTech") is a corporation organized and existing under the laws of the State of Nevada, having its principal place of business located at 701 S. Carson Street Suite 200 Carson City, Nevada 89701.

6. For purposes of diversity, ReTech is a citizen of Nevada.

7. No member, partner, or limited partner of Bellridge is a citizen of Nevada.

8. Accordingly, there is complete diversity of citizenship.

## JURISDICTION AND VENUE

9. The Court has jurisdiction pursuant to 28 U.S.C. §1332(a)(2) in that the action is between citizens of different states and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

10. This Court has supplemental jurisdiction of plaintiff's various state law claims pursuant to 28 U.S.C. section 1367(a).

11. Venue is proper in this District pursuant to 27 U.S.C. §1391(a), in that it is a judicial district in which a substantial part of the events or omissions giving rise to the claims occurred and/or defendant consented to jurisdiction and venue in the Southern District of New York.

**FACT COMMON TO ALL CLAIMS FOR RELIEF**

12. On or about September 14, 2018, after arm's-length negotiations, ReTech and Bellridge executed a Securities Purchase Agreement (the "First SPA") and related agreements.

13. The First SPA provided, inter alia, for the purchase of a Convertible Redeemable Promissory Note from defendant to Bellridge, in the amount of $60,000.00 (the "First Note"). A true and correct copy of the First Note is attached hereto as Exhibit A.  A true and correct copy of the First SPA is annexed as Exhibit B.

14. On or about September 14, 2018, ReTech executed a letter to its transfer agent (the "First TA Agreement") whereby it agreed, among other things, to establish and maintain a reserve of shares for the benefit of Bellridge.

15. Bellridge duly funded the purchase of the First Note and First SPA.

16. On October 17, 2018, after arm's-length negotiations, ReTech and Bellridge executed an additional Securities Purchase Agreement (the "Second SPA", together with the First SPA, the SPA's) and related agreements.

17. The Second SPA provided, inter alia, for the purchase of an additional Convertible Redeemable Promissory Note from defendant to Bellridge, in the amount of $60,000.00 (the "Second Note", together with the First Note, the "Notes").  A true and correct copy of the Second Note is attached hereto as Exhibit C.   A true and correct copy of the Second SPA is annexed as Exhibit D.

18. On or about October 17, 2018, ReTech executed a letter to its transfer agent (the "Second TA Agreement", together with the First TA Agreement, the "TA Agreements") whereby it agreed, among other things, to irrevocably establish and maintain a reserve of shares for the benefit of Bellridge.

19. Bellridge duly funded the purchase of the Second Note and Second SPA.

20. In accordance with the First Note[1], ReTech was required to:

reserve and keep available out of its authorized and unissued shares of Common Stock for the purpose of issuances upon conversion of this Note and the issued with this Note, free from preemptive rights or any other actual contingent purchase rights of Persons other than the Holder (and the other holders of the Notes), not be less than 350% of the Required Minimum or 35,000,000 common shares or as agreed; and; and if at any time the number of authorized but unissued shares of Common Stock shall be insufficient to effect the conversion of this note or shall be less than the Required Minimum, the Company shall take such corporate action as may, in the opinion of its counsel, be necessary to increase its authorized but unissued shares of Common Stock to such number of shares as shall be sufficient for such purpose. The Company covenants that all shares of Common Stock that shall be issuable upon conversion of this Note shall, upon issue, be duly authorized, validly issued, fully paid and nonassessable.

See Notes, Par. 4 (vi).

21. On or about March 18, 2019 Bellridge issued a notice of conversion (the "March 18, 2019 Notice of Conversion"), seeking to convert $15,000.00 in principal and $747.95 in interest of the Notes into 37,495119 shares of ReTech stock.

22. However, plaintiff was informed by the Transfer Agent that, in violation of the terms of the various agreements, it did not have sufficient shares in reserve in order to honor the March 18, 2019 Notice of Conversion.

23. On or about March 21, 2019, Bellridge requested that ReTech increase the number of shares in reserve, in accordance with Par. 4 (vi) of each Note.

24. ReTech failed to increase the reserve, in violation of the terms of each Note and SPA.

25. Section 4(a) of the Notes provide as follows:

---

[1] The Second Note contains an identical provision, but contained a Required Minimum of 75,000,000 shares.

4

At any time after 180 days from the Original Issue Date of September 14, 2018 and until this Note is no longer outstanding, and provided that that the provisions of Rule 144 under the Securities Act so permit, this Note shall be convertible, in whole or in part, at any time, and from time to time, into shares of Common Stock at the option of the Holder. The Holder shall effect conversions by delivering to the Company a Notice of Conversion, the form of which is attached hereto as Annex A (each, a "Notice of Conversion"), specifying therein the principal amount of this Note to be converted and the date on which such conversion shall be effected (such date, the "Conversion Date"). …

26. Section 4(b) of the Notes define the Conversion Price as:

he lowest of $0.01 or 60% of the lowest trading price for the Company's Common Stock during the Twelve Trading Days immediately preceding the delivery by the Holder of a Notice of Conversion, provided however and notwithstanding anything to the contrary herein, during an Event of Default the Conversion Price in in effect on any Conversion  Date means, as of any Conversion Date or other date of determination, shall be 50% of the lowest trading price for the Company's Common Stock during the twenty Trading Days immediately preceding the delivery by the Holder of a Notice of Conversion. The applicable prices shall be as reported by Bloomberg L.P. Notwithstanding the foregoing, in no event shall the Conversion Price be less than the par value of the Common Stock.

27.     Section 4(c)(ii) of the Notes provide that ReTech is required to deliver the stock within three trading days of receipt of a Notice of Conversion, and that its obligation to do so is absolute and unconditional.

28.     Section 7 of the Notes provides for the events of default. Among other things, Section 7(xi) provides that there is a default if: "the Company shall provide at any time notice to the Holder, including by way of public announcement, of the Company's intention to not honor requests for conversions of any Notes in accordance with the terms hereof or the Company does not honor a request for conversion of any Notes as required by the Notes"

29.     Likewise, Section 7(ii) of the Notes provides for a breach where "the Company shall fail to observe or perform any other covenant or agreement contained in the Notes".

30.     Section 2 of the Notes provides for ordinary interest of 10% per annum, and of 24% per annum in the event of a default.

5

31.  The Notes also provide for the consequence of an event of default, as do certain provisions of the SPA's, including the amounts due, default interest, and the liquidated damages that are due in the event of a default.

32.  The liquidated damages provisions of the Notes and SPA's were reasonable at the time of entering the contract and are not grossly disproportionate to the conceivable losses that could occur from a breach.

33.  ReTech also failed to honor the conversion notices submitted on March 18, 2019, in violation of the terms of the agreements.

34.  ReTech also failed to establish and maintain the required reserve of shares.

35.  Accordingly, for the foregoing reasons, ReTech is in material breach of the various agreements.

36.  Damages from ReTech's failure to comply with the various agreements are inherently uncertain and difficult to calculate. Because of ReTech's actions, plaintiff has been unable to effectuate conversions of the Note.

37.  Since the parties entered in the transactions described above, ReTech's Stock price has ranged from a high of $1.00 per share on September 18, 2018 to a low of $0.0016 per share on January 13, 2020. Thus, the timing of conversions and sale of stock would be essential to the determination of damages.

38.  Without injunctive relief, ReTech is unlikely to satisfy any monetary judgment and Bellridge will suffer irreparable harm.

39.  In accordance with Section 4(c)(ii) of the Notes, ReTech is required to deliver the stock within three trading days of receipt of a Notice of Conversion.

40. Thus, for this reason, and those stated above, Defendant is in breach of the Notes and SPA's.

41. All notices and prerequisites to bringing this action, if any, have been complied with or were waived.

### FIRST CLAIM FOR RELIEF
### (SPECIFIC PERFORMANCE)

42. Bellridge realleges and incorporates by reference each and every allegation contained in all preceding paragraphs of this Complaint as if fully set forth herein.

43. Each of the agreements entered into by plaintiff and ReTech, including the Notes, SPA's and TA Agreements, are valid and binding agreements.

44. As set forth more fully above, ReTech breached the agreements, by among other things, failing to honor the conversion of one or more of the notes into shares of ReTech stock and failing to establish and maintain a share reserve.

45. ReTech's conduct constitutes a breach and default under the terms of each of the agreements.

46. Plaintiff has performed all obligations of the relevant agreements that were its obligation to perform except for those obligations that it could not perform because of defendant's breaches herein.

47. Pursuant to the agreements between the parties, ReTech is obligated to allow the conversion of the Notes into shares of ReTech stock, and to establish and maintain a share reserve.

48. Despite its obligation to do so, ReTech has failed to allow the conversion of the Notes into shares of ReTech stock, to establish and maintain a share reserve, and has failed to honor the notices of conversion sent by plaintiff.

49. As a result of such refusal by ReTech, Bellridge has suffered damages.

50. Among other things, Bellridge is ordinarily entitled to convert each of the Notes until it owns 9.9 % of ReTech shares. It may then sell the shares, and again convert the Notes until it once again owns 9.9% of shares of ReTech, sell the shares, and keep repeating the process until each Note is entirely converted. By failing to comply with its obligations, ReTech prevented Bellridge from exercising these bargained for rights under the terms of the agreements.

51. Bellridge has no adequate remedy at law.

52. In the absence of injunctive relief and specific performance, Bellridge will suffer irreparable harm.

53. Section 4(c) (iv) of the SPA's provides that: "Holder shall have the right to pursue all remedies available to it hereunder, at Law or in equity including, without limitation, a decree of specific performance and/or injunctive relief."

54. Bellridge requests, therefore, that the Court enter an order requiring ReTech to specifically perform the relevant agreements, including the Notes and SPA's and TA Agreements, to establish and maintain a share reserve in accordance with the agreements, to honor the notice of conversion sent by plaintiff, and to convert same into shares of unrestricted stock in accordance with the agreements.

**SECOND CLAIM FOR RELIEF**
**(BREACH OF CONTRACT)**

55. Bellridge realleges and incorporates by reference each and every allegation contained in all preceding paragraphs of this Complaint as if fully set forth herein.

56. Each of the agreements entered into by plaintiff and ReTech, including the Notes, SPA's and TA Agreements, are valid and binding agreements.

57. As set forth more fully above, ReTech breached the agreements, by among other things, failing to honor the conversion of one or more of the notes into shares of ReTech stock and failing to establish and maintain a share reserve.

58. ReTech's conduct constitutes a breach and default under the terms of each of the agreements.

59. Plaintiff has performed all obligations of the relevant agreements that were its obligation to perform except for those obligations that it could not perform because of defendant's breaches herein.

60. ReTech's breach and default are governed by New York law under the terms of the agreements.

61. In accordance with Section 4(c)(ii) of the Notes, ReTech is required to deliver the stock within three trading trading days of receipt of a Notice of Conversion.

62. GW is therefore entitled to an award of damages in an amount to be determined at trial but in any event in excess of $116,713.70 in principal, plus liquidated damages and default interest, and damages as provided for in the agreements and by law.

### THIRD CLAIM FOR RELIEF
### (PERMANENT INJUNCTION)

63. Bellridge realleges and incorporates by reference each and every allegation contained in each preceding paragraph of this Complaint as if fully set forth herein.

64. Pursuant to its obligations under the relevant agreements, ReTech is obligated to honor any notice of conversion sent by plaintiff, to establish and maintain a share reserve, and to comply with the terms of the various agreements.

65. Despite its obligation to do so, ReTech has failed to honor notices of conversion sent by plaintiff, to establish and maintain a share reserve, and to comply with the terms of the various agreements.

66. As a result of such refusal by ReTech, Bellridge has suffered damages.

67. Among other things, Bellridge is ordinarily entitled to convert each of the Notes until it owns up to 9.9% of ReTech shares. It may then sell the shares, and again convert the Notes until it once again owns 9.9% of shares of ReTech, sell the shares, and keep repeating the process until each Note is entirely converted.  By failing to honor its obligations under the agreements, as set forth above, ReTech prevented GW from exercising these bargained for rights under the terms of the agreements.

68. Bellridge has no adequate remedy at law.

69. In the absence of injunctive relief, Bellridge will suffer irreparable harm.

70. Additionally, ReTech consented to an injunction when entering into the agreements.

71. Section 4(c) (iv) of the SPA's provides that: "Holder shall have the right to pursue all remedies available to it hereunder, at Law or in equity including, without limitation, a decree of specific performance and/or injunctive relief."

72. Likewise, Section 7(h) of the Note provides:

> The Company therefore agrees that, in the event of any such breach or threatened breach, the Holder shall be entitled, in addition to all other available remedies, to an injunction restraining any such breach or any such threatened breach, without the necessity of showing economic loss and without any bond or other security being required.

73. Bellridge requests, therefore, that the Court enter an Order enjoining and requiring ReTech to honor notices of conversion sent by plaintiff, to establish and maintain a share reserve, and to comply with the terms of the various agreements.

## CLAIM FOR RELIEF

**WHEREFORE**, Plaintiff GW seeks judgment against Defendants as follows:

i. On the First Claim for Relief, GW requests that the Court enter an Order requiring ReTech to specifically perform the relevant agreements, including the First Note and First SPA, the Second Note and Second SPA, to establish and maintain a share reserve in accordance with the agreements, to honor the notice of conversion sent by plaintiff, and to convert same into shares of unrestricted stock in accordance with the agreements; and

ii. On the Second Claim for Relief, for damages in an amount to be determined, but in any event in excess of $116,713.70 in principal, plus liquidated damages and default interest; and

iii. On the Third Claim for Relief, issuing an Order enjoining and requiring ReTech to to honor notices of conversion sent by plaintiff, to establish and maintain a share reserve, and to comply with the terms of the various agreements; and

iv. For such other further relief as the Court may deem just, proper, and in the interest of justice.

Dated: January 22, 2020
     New York, New York

LAW OFFICE OF JEFFREY FLEISCHMANN PC
By: /s/Jeffrey Fleischmann
Jeffrey Fleischmann, Esq.

*Attorneys for Plaintiff Bellridge Capital L.P.*

150 Broadway, Suite 900
New York, N.Y. 10038

Tel. (646) 657-9623
Fax (646) 351-0694
jf@lawjf.com

12